The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Eugene G. Doherty presiding. Good afternoon. The board is calling case number 4-25-0398, Chronister Oil Company v. Pollution Control Board at Illinois Environmental Protection Agency. Would counsel for the appellant please state your name for the record? Patrick Shaw for Chronister Oil Company. And for the appellee? Valerie Quinn for the Pollution Control Board and the Illinois EPA. All right. Counsel for the appellant, you may proceed. Thank you, Your Honor. And good afternoon, Your Honors. Counsel, may it please the court. I'm here on behalf of Petitioner Chronister Oil Company. This court should reverse the Illinois Pollution Control Board's decision rejecting Chronister's appeal, which sought reimbursement from the Underground Storage Tank Fund for cost cleanup of petroleum releases here in Springfield. These cleanup costs were determined to be reasonable and proper by the certification that the requirements of the Project Labor Agreement actively fulfilled. The cleanup costs at issue in this appeal were incurred prior to the imposition of the PLA obligation, and it was the purpose of this appeal to the board to seek reversal on the grounds of retroactive imposition of the PLA requirement. On cross motions for summary judgment, the board ruled that Chronister's appeal was improper for failing to appeal the initial imposition of the PLA requirement as part of a corrective action plan. In doing so, the board relied on Jersey Sanitation Corporation, which held that generally a permit condition imposed by the OEPA, which is not timely appealed, cannot be challenged in a subsequent permit submission. However, the principle did not apply, according to the court, to, quote, a different type of permit, end quote. The payment application here was a different type of permit than the corrective plan that imposed the PLA requirement. Moreover, a distinction can be drawn in this case between the PLA requirements being imposed as a general matter on one hand and whether the PLA requirements should be applied to a particular cost on the other hand. Counselor, you said that the initial costs were incurred prior to the PLA obligation. When did the PLA obligation arise? The PLA obligation arised when we were notified of the PLA requirement in the approval of the corrective action plan. I don't have the date in front of me. I think there was some confusion. I kind of noticed that there's a process that goes on in the Illinois Environmental Protection Agency, which outsiders are not privy to. We submit a plan. I say we, consultants, professional consultants submit a plan, and internally the agency makes a PLA determination that is not made public to us. It only becomes public to us, and we have notice that a PLA determination has been made when the corrective action plan is issued. We get the corrective action plan decision, and it says basically your plan is approved, your budget is approved, but on the condition that Project Labor Agreement Act is met and complied with. Is it your position that the approval of the plan and the budget, which is sort of in the middle of the work, is ambiguous as to whether it applies, meaning the PLA requirement applies to the completed work or just the work to be completed in the future? I think when my position is, our position is that this condition was imposed while at the same time it approved the work plan and it approved the work plan that we're talking about here. There was no inference or insinuation that there was something wrong with how the work had been done or would be done. Just carry on, and here's a couple hours more or two or three hours more work you may need to do to just get the PLA signed from whomever it was, but we can't go back in time and do that. I think that my reading on it is that the understanding was the PLA requirement would be prospective only, and that's because the agency approved the work, they approved the budget for past work, and they added a provision for complying with the PLA requirements to the future work section of the contract. Retrospectively, you can't go back and say, I did this work that we've already finished the job, paid the contractors. We can't say that was all done in compliance with the PLA Requirement Act. So, I guess partly I'm saying I think that is the reasonable interpretation of the decision that was made by the agency when it approved the corrective action plan, but it also falls into the situation in which an ambiguity can be recognized when two possible interpretations are available, in which case I think also we would prevail on sort of ambiguous grounds given that retroactive application would fail for being a possibility issue with retroactive application. That couldn't have been a reasonable conclusion that the agency was expecting us to do. Thank you. The distinction that I've drawn in the briefs is to emphasize that we did not challenge the imposition of the PLA requirement in general, but there is a distinction that can be drawn between objecting to the PLA requirement in general and how it should apply to a particular cost on the other hand. The Illinois EPA's own demonstrative practice is that it does not require PLA certification for all corrective action work subject to a PLA, but only to those costs for which it is proper to apply a PLA. On the same date that the Illinois EPA denied cost for lack of PLA certification herein, it approved a separate payment application without a PLA certification. Both these payment applications sought reimbursement for work approved in the corrective action plan that imposed a PLA obligation, but the agency separately evaluated whether it was proper to apply that obligation as to the particular cost in each application. So, each application was treated differently, and the question there at that stage is, how does this PLA application apply to the payment of these costs? So, in other words, as the payment stage and as applied challenge to the modification, the planning stage exists. This is a little bit of a step further than the type of permitting decisions that were at issue in Jersey Sanitation. Jersey Sanitation dealt with, you know, permits after permits after permits. Underground Storage Tank Program works on a two-stage process. You submit a plan, and then you submit payment for the plan. The plan is generally reviewed by technical staff. The payment is generally, payment is usually generally reviewed by the accounting auditing staff. There's two different groups. Chronister is simply seeking access to the consideration which the Illinois Environmental Protection Agency was already employees at the payment stage. Chronister is not seeking reversal of the imposition of the PLA obligation altogether, but only as to work performed prior to the imposition of the PLA obligation, which would impossible before retroactively. It would serve no legitimate purpose under the Illinois Bioprotection Act or the Project Labor Agreement Act. The argument has been made that you should have appealed from that initial budget determination and plan approval. Typically, when you appeal, it's because you've lost and your position hasn't carried the day. Is there any way that your application lost or was denied in any material way such that you would have appealed? I think the board's position was, well, yeah, our corrective action plan and budget was approved with modification. That's what kind of creates sort of the some ambiguity because if this work needed to be done with the Project Labor Agreement compliance, well, obviously that wasn't done, but yet the work is fine. It looks like an approval and it looks like an approval with some money added to the future plan that would address the concern that the consultant would have that you're imposing a new requirement, additional requirement, that I need more resources for. Apparently, the consultant talked with the EPA about it and said, well, how much do you think this will need? This will be three hours. So, there's three hours added. This all kind of looks like everything can be handled directly. As we would contemplate in the future, we'll get the PLA agreement prepared and agreed to and we'll just go on to clean the site up and get it done. This is a program, probably not unlike a lot of administrative agency programs, in which very technical issues are being dealt with by consultants, professional people, engineers, geologists, and the Environmental Protection Act says that this program is intended to be approval plans prepared by, certified by engineers, I believe. So, they prepare this. It goes to the Environmental Protection Agency and their technical staff looks at it and they're looking at it on this background in which these processes have some implications in the statutes and the court decisions. But these are technical people communicating with technical people. These are not lawyerly drafted documents that are submitted and the agency's decision is not drafted by a lawyer. Lawyers usually get involved at the very end when a lot of things have been done. But I would raise that to say, kind of the sharp elbows approach of legalistic, narrow legalistic interpretations is sort of against how that act is supposed to work. The idea is, for the most part, this is going to be not lawyers deciding how or when stuff is cleaned up. It even goes so far in, I believe, 57.8L of the Environmental Protection Act. It says the attorney fees shall not be paid from the UST fund. So, there's no understanding that the UST fund requires attorneys to do the work. It requires consultants to do the work. Mr. Shaw, does the record reflect what sort of experience, history Cranston Oil had prior to this project in accessing funds from the UST fund? I don't know. The record that is filed by the agency includes the stuff that the agency apparently found relevant to its review of the project. And I think what you basically get from that is Cronister came into this at some point in time, long after these releases have been reported. The indication of that is that there are a series of documents in which Cronister Oil, elected to proceed as owner of the cleanup, take responsibility. Ideally, this probably would not have handled... Ideally, what would have happened is back in the 90s, or whatever the dates on these releases were, those tanks would have been removed. And that would have been the end of... That would at least resolve the possibility of continuing releases from tanks at an active station. But I think Cronister, to my mind, looks like in the record is a company who obviously wants to make business selling gasoline, but took responsible choices to make sure that the site's cleaned up and that the site doesn't continue to have post problems while we're trying to figure out how to clean up the site. The tanks needed to be removed. I don't know if that answers your question or... Well, actually, I was going to then ask you about whether or not it should have considered a possibility that a PLA was going to be required for that past corrective action. But instead, it went ahead with the work. Can you comment on that? Well, I don't think most... I think in terms of like impossibility to get a PLA, most people wouldn't assume that a PLA requirement would be retroactively imposed. But the real risk that Cronister took here was to go ahead and do this work and then submit the budget afterwards. That is a risk that has long existed, and it's one that if you're comfortable with knowing what needs to be done, and you've talked with the agency beforehand, you can do that. But you're always running the risk that when the budget comes back, they second-guess you and say, I think you could have done that in four hours. You took six hours and just go line by line by line through that. That is a significant risk. That did not happen here. We have knowledgeable consultants who do this job, who had communicated with the Environmental Protection Agency, they had a good idea of what budget would be approved. And the Environmental Protection Agency generally feels a lot more comfort with actual cost numbers, because a budget is just an estimate. And a lot of times, consultants will say, I don't know if this could happen or that could happen, and numbers may seem to the Environmental Protection Agency as large. So, they do get some assurance from this kind of work that the costs were necessary, because basically, the consultant did the work, submitted its timesheets and hours, billed the client, the client paid for it. And that was, you know, those are satisfactory. Those are the, you know, there was risk in doing that, but they work properly to find those risks. I would just also point out the stuff about the PLA is kind of, it may be 15 years now, it's pretty new. It's sort of composed into an existing statute and program without maybe the fine tuning you would expect if it was a part of the original legislation, like a lot of legislation. I'm not saying it's unusual, unique in that respect, but it is true that this PLA is submitted in various ports of the Elevated Water Protection Act, and maybe it doesn't completely all make sense. But I know that the board likes to cite this provision that warns you that, you know, you still got to get a budget approved if you do the work first. That was done before the PLA requirement was imposed. And I don't know that that warning and the regulation really applies to this. The provisions of the Elevated Water Protection Act still say that you got this right to do CLEA first and budget later, notwithstanding any of these other provisions in Section 57. And that includes the PLA requirement. That's where the PLA requirement was initially inserted. But it also, in the code, it says if you do that prior to approval, you may not receive full reimbursement under the fund. Yeah, you receive, you do that, but you still have to prepare a plan and budget. So, if you go and just do the cleanup, you won't get paid unless you get a budget plan approved, like they did in this case. And, you know, there's always the risk of second-guessing about how you could have done this cheaper. The imposition of a PLA requirement is, you know, is a fact for something that could happen in the future, but that wouldn't matter if you did it before or after. At some point... Well, why wouldn't they assume that they, why wouldn't we assume that they wanted the PLA to be in effect at the time the bulk of the work was being done, as opposed to making it in effect after the work was done when it's probably too late to have any impact? Well, I mean, I suppose right now with this board decision decided, I think that maybe there will no longer be anybody who wants to do the work first and then seek approval of the plan and budget after, because the board's decision operates as a forfeiture. That's unpredictable. I mean, they could have done this, they could not have done this. Most sites do not get project labor agreements. It's pretty rare. There's a lot of reasons for that. What's the determining factor? What determines whether it's required or not required? I mean, how predictable is it? Well, I don't know that it is predictable, because we only have, this is the second board decision on it, and I'm not sure anybody has evaluated it, but like I said, when the project labor agreement decision was made, in-house, we didn't know about it, we didn't have access to it when the corrective action plan decision was made, and so we did not have an idea of what findings were made or what their basis was. We would have had to appeal that corrective action plan decision to get a copy of the PLA determination, which basically, if you look at it, it's basically a bunch of check boxes. I would also emphasize, I guess the other thing about it, now that we have that determination, we can note that the discussion in the box on that PLA determination all has to do with prospective work. It doesn't have to do with retroactive work, so that would be the other consideration about why a PLA requirement was not intended to operate retroactively. The determination itself speaks about future work, which was significant. I think that was probably, they looked like there's a lot of work still to do, and so there would be sufficient labor work to do that might be useful. Looks like your time has concluded. Do you want to just briefly sum up? Well, thank you, your honors. I just again ask that the court reverse the board's decision and remand with directions to consider our appeal of the overall protection agency's decision notwithstanding the corrective action plan determination. It was not appealed. Thank you. Thank you. Ms. Quinn? Do I unmute myself? You are unmuted. I'm unmuted. Thank you so much. Your honors, 57.7 envisions an orderly process for cleaning up contaminated sites. It's submit a plan, get approved, do the work, and that's in two places in the statute. That's in 57.7A.4 with regards to the early action slash site investigation, and then also in 57.7B.4, which is the corrective action, which is at issue here. Now, the statute does allow owners to proceed without waiting for IEPA approval and to submit their plan later. That's what the notwithstanding clause addresses because normally it's submittal, approval, do the work. Is there some degree of public interest that that be the case? I beg your pardon, your honor? Is there not some degree of public interest to be served by quick action without waiting for the review process? Well, it's very important, your honor, for me to make clear what kind of work this referred to. Chronister suggests incorrectly, particularly in its reply brief, that it had to do this work because it had to prevent petroleum from continuing to leak away from the tanks. That is not correct. As part of its early action, Chronister took out those tanks and took out four feet of soil that was around them, and it got reimbursed for that work. That was early action work. That was the subject of the 45-day report. They decided around the same time to go further and do the work that they were going to start to need to do in order to get the gas station up and I can give your honor page numbers in the record to look at because I realize this record is kind of a beast when it comes to trying to find what you're looking for. That secondary excavation, that was part of their corrective action plan, and that's what they needed to wait for approval for. When they took out those leaking tanks and they cleaned up that area, the urgency was over. The emergency was over. There is no reason why they couldn't wait for approval of their plan that was going to help them. That is a very case-specific discussion of the issue. Would they potentially be in the same boat, though? Would they not get reimbursed for the early action because they didn't have the PLA? PLAs don't apply to early action, your honor. So they wouldn't have been in the same boat. No, they could have waited. This was not a surprise. They got their decision letter in July of 22, and they had asked that a PLA not be imposed. So it's very interesting that council says that there's some ambiguity as to what was required here. If they felt at all like the agency approval letter in 22 was the least bit ambiguous, they had 35 days and potentially 90 more days to mull it over and seek clarification. Can we just drill down on that a minute? Absolutely. I get it. If they want to contest what that initial decision was, what it said, what it required, I agree with you that is an appellate action that had to have been taken earlier. But we still have a completely open door to interpreting what that action said, right? I mean, we have to be able to know whether the PLA was required for past work under that plan. That's not a matter for them to appeal. It's for us to decide. Agree? No, that was a matter for them to appeal. If they thought a PLA should not have applied even to the work that they had worked on. No, not the should, but the did. Did a PLA apply for the past work or not under the prior decision? Yes, it did. Well, that's your position. But you understand we have to decide that, and that that door isn't closed at all just because it wasn't appealed. We have to decide what does the prior decision say? And it said that a PLA applied to the work. It did not distinguish future work or past work. And so that's why I say to the extent that they now say it was ambiguous, they should have inquired. They did it. They let the appeal period close. Their door to appeal this under Section 40 of the Act was 35 days, plus potentially 90. The fact that it said it applied increased the budget for the future work and referenced essentially only the future work isn't a reasonable interpretation that while a PLA was applied, a PLA requirement was applied, it was for the future work but not for the prior work. That was not a reasonable interpretation, Your Honor. How could it apply to the prior work? Because this is part of the risk. If you don't wait for your approval, if you decide you're going to forge ahead, you take the risk that all the excavation you just did should have been done under a PLA. But you went and did it, so now it's impossible. We certainly don't want people sidestepping the requirement of a PLA by doing the work and then saying, oops, it's in the past. We can't do that now. It seems a little incongruent that that would be the agency's position if they also approved the budget for that work. Why could this come crashing down all at once? Because, Your Honor, again, we go back to 57.7E1 and E2. E1 says, notwithstanding all these requirements of submittal approval work, you can go ahead and do it. However, under E2, it requires the agency to examine the budget, go line by line, and approve it in the same manner as if they had submitted it prior to doing the work. They're required by statute to do that. If they didn't do that, they could be sent back, the decision could come back to them, no matter how the board decided, to make them do that work that they should have done. For a reimbursement that, according to you, would never happen because there was no PLA. That's correct, but it's to avoid piecemeal litigation. It is a requirement of the statute the agency had to do, had to go through its specific line by line approval at that point. I also want to emphasize this. Chronister is not a small mom and pop operation, they have service stations all over southern Illinois, northern Missouri. They had ample technical expertise at their disposal. They had several different environmental consulting firms, and those consulting firms, in turn, hire contractors that specialize in digging up contaminated soil. If anyone in that process had any questions about what was applied or what was not applied, they should have inquired in 2022 when it was imposed, not later at the payment stage. That would have been good. It doesn't relieve us from deciding what was required under the decision issued, correct? We still have to decide. If it didn't say what you said, you couldn't argue that it said it. But it does say it, your honor. We have to decide what it says. The corrective action, I would like to point to the court for the pages of the corrective action, the early action, digging up the soil. You can read that in C-54 to 56, okay, and it talks about making everything, you know, proper, removing the tanks, and then they refer to it in their paperwork as secondary excavation, and that is also in C-54 to 56, and you can see it in C-72 to 73, okay. The drawing 3A on 72 has the excavated, the dugout tanks, the excavated soil. The second drawing on C-73 is a lot bigger, and that was corrective action. Okay. Yeah. I mean, go ahead, Jerry. Go ahead. Why not deny the PLA for the past work and then approve the future work? Instead, you just set one blanket approval. Why not specify that if a PLA should have been submitted for the already completed work? Is your honor talking about at the payment stage in 23? Because, yeah, I'm not understanding what stage your honor is suggesting that they should have divvied it up like that. When they received the letter saying that the payment was approved and we're adding a few future things here that need to be done. In that approval letter, it was for the past work and future work. Why not separate it out? Because they weren't seeking payment at that point, your honor. They were just getting approval of their overall plan. Why would you approve a plan that you're not going to reimburse? Because there are requirements other than you're going to get paid back for some of this. There's a requirement that the budget be reasonable and necessary, that the work not exceed the scope of what needs to happen under the various statutes for what's required to clean up. I mean, you can you could be doing things way beyond what the statute requires. Okay, right. But they're free to do that, right? They can go above and beyond. All of what you just said has to do with going above and beyond what's required if you're seeking reimbursement. I'm sorry. Now, I'm not understanding that, your honor. Sure. I mean, you're seeking reimbursement. You have to go above and above. No, no, no. Okay. You're saying that the approval was for things other than reimbursement. But what you just described, going above and beyond, seems to me that the only thing that would depend on that is if you're seeking reimbursement. It's not something separate from reimbursement. But you cannot get reimbursed for expenses that would have gone above and beyond what. But a PLA is not. I totally get that. Yeah. But you were trying, you were answering Justice Cruchot's question by saying, oh, but the approval has to do with more than reimbursement. Well, give me an example. What unrelated to reimbursement does the approval have to do with? If you wanted to install more monitoring wells than are technically required, you might not get reimbursed for that. It might be beyond what is necessary. You're still talking about reimbursement. I want you to give an example along the lines of what you answered Justice Cruchot's question, that this interim approval process, the budget, the plan, that that has to do with more than reimbursement. So tell me something unrelated to reimbursement that that approval has to do with. It has to do with all the technical aspects of the project. How much soil is going to be removed? What is going to happen to it after the fact? How many monitoring wells are going to be installed? How far out they're going to dig? I mean, I'm not an engineer, so I can't speak to all the various things. That's more for the technical people. Are there consequences of non-compliance with those things beyond losing reimbursement? If they were to do above and beyond? Yes. I mean, nobody's going to punish them for going above and beyond. So what does the approval have to do with? No one's going to say you have to undo the work you just did because that was too much. No, that's not going to happen. Okay. So what is the non-reimbursement consequence of denying approval? There isn't one, I don't think, but I can look that up. So that's what it's all about. And that's what Justice Kershaw said. Why would you approve something if it has this kind of poison pill aspect that, well, we're going to approve everything, but because it didn't have a plan, we're actually not going to pay it anyway. Because they were supposed to wait for approval before they did this work. They elected not to. And then they submitted a plan that was reasonable in most respects, but they were supposed to get a PLA for it. It was for the whole amount of work. Future, past, all of it. So a PLA is required for past work? In this case, they should have waited. They should have waited to do the work because they didn't wait. They took the risk that a PLA would be applied. Yes, Your Honor. Would it be true that sometimes a PLA is required and sometimes it's not? So the contractor has to make some educated guess as to whether it will be? Well, they don't. That's the thing. You know what? They didn't have to make an educated guess here. They could have asked. They didn't. I thought it kind of suggested in their brief that they could not have gotten a PLA all on their own. That isn't true either. There is nothing in the PLA that requires that the state impose it. You could have just gone ahead and gotten one. Should have gotten one in this case. It doesn't cost that much to get a PLA put into place. And again, they had environmental consulting firms at their disposal. They had ample technical expertise throughout this process. And they should have known that this was something that could happen by taking the risk of going ahead and doing the work first. Sorry. Gwen, this was summary judgment. We've been talking about whether or not it's retroactive just in terms of the ultimate merits of the question. But isn't this a disputed material fact? Actually, it's not. Both parties agreed that there were no disputed issues of material fact. That's why they both sought summary judgment. Well, that's whether or not this was retroactive. I don't think anybody was arguing about whether. Well, I don't think they were arguing about it was retroactive. Both parties agreed there weren't any disputed material facts. Perhaps whether or not someone thought it was retroactive that you couldn't apply a PLA to work retroactively. Perhaps someone was confused about that. But there's always a risk when you proceed without approval. You agree we review the department's grant of summary judgment under the same rules that apply under the Code of Civil Procedure? The board's grant of summary judgment, Your Honor? Yes. Yes, I do. So I'd just like to emphasize that this was not an emergency. The emergency was over. Perhaps because they had the diggers there already, they decided to go ahead and do more in terms of their corrective action plan. But that was not an emergency. That could have waited and should have waited. If the court has nothing further, I would urge the court to affirm the Pollution Control Board's decision, unless there's any other questions for the board at this time. Seeing none, thank you, Ms. Quinn. And return to Mr. Shaw. Thank you, Your Honor. Well, I disagree with the assertion that there's some misrepresentation in my briefs. There are multiple releases reported from tanks at this site back in the 1990s. Those were never cleaned up. Those were never remediated prior to Chronister Oil's acquisition of the property and the election to proceed as owner. Is that an emergency or not an emergency? Active tanks from the 1990s that have evidence that they're leaking and work wasn't done, you can only do a tank pull as part of early action in the first 90 days from when a reported release has been made. So to the extent those could have or should have been removed from service, replaced with good tanks, that had to be done if it was going to be done pursuant to early action back in the 1990s. So we did not have that option. What happened in this case is they decided to go ahead and do corrective action, and when they dug in, the state fire marshal there reported a new release. And the release is basically the same thing as before. There's evidence of petroleum that's not in a contained space at a service station. And it imposed a new round of obligations. And what the consultant did was bifurcated. So I think the timing is pretty clear in the record. I don't have in front of me, but they started the work. They got a state fire marshal in there before they called in. Fire marshal told him to call in a new release. That new release is what provided an opportunity to do some of this work as early action. But that sequence is important because you can't do early action without it being within 90 days of a release being called in. Just more generally, all the stuff about risk, and I take a bit of offense about that. This is a great program that the Pollution Control Board, the Illinois Environmental Protection Agency are administering here. It's unlike other parts of the environmental world where basically something bad happens and nobody has money to fix it. And then nobody has time to do it, and nothing ever happens. This is a program in which we can see from a case like the state of Gerald Slydom that was before the 4th District here about 10 years ago, that people still do not have enough money and resources to implement it. Mr. Slydom got a deductible of $100,000 to clean it up. And the next thing we know, we have an estate of Gerald Slydom 25 years later or whatever, and the heirs are looking at trying to clean it up. And the state had lowered the deductible, which makes a lot of difference. A lot of people do not have the money to pay for this. If you want to take, say, my client has the money and make that part of the argument, I don't think that's going to be in the final decision. But the rules being implemented here apply to mom and pop stores and small businesses and the next generation as well, who are going to be faced with this idea that you take risks in this program. As a general matter, that's bad for the environment. It's not consistent with the purposes of the Environmental Protection Act, and that should be rejected. As of today, do we have a decision from the board as to whether a PLA was or wasn't required under that first review decision? Or did the board say it couldn't decide because there was no prior appeal? Do we know? I believe it's a second. I believe at some point they basically say reject a number of my arguments in their decision because they said they should have been raised when the corrective action plan and budget was first approved. So I kind of take this. I know this is motions for summary judgment, but I strike it as basically almost like a motion to dismiss the appeal because it's not a proper appeal. It may be in some other forum. If it's a court forum, it might be like a 2619 motion or something like that, but it was obviously resolved in motion for summary judgment. I don't have anything else unless someone has any questions for me. All right, hearing none, I thank both counsel on behalf of the court for your argument. We will stand and recess and issue a decision in due course. Thank you.